IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CORNELIUS BROWN,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>DEPARTMENT OF HEALTH & HUMAN SERVICES, CINDY DYKEMAN, Program Manager; SHANNON BLACK, Dr., Program Director; JANA STONER, Program Therapist; KYLE MALONE, Program Team Lead; LISA LAURELL, Program Social Worker; COURTNEY PHILIPS, Director of Dept. of Health & Human Services; CHALICE CLOSEN, Program Team Leader; and GAVIN WISEMAN, Patient at Lincoln Regional Center;<br><br>　　　　　　Defendants. | 8:16CV245<br><br>**MEMORANDUM<br>AND ORDER** |

　　　　Plaintiff filed his Complaint on June 3, 2016. ([Filing No. 1](#).) He has been given leave to proceed in forma pauperis. ([Filing No. 6](#).) On December 2, 2016, Plaintiff filed a "Motion: For Leave to File an Amended Complaint." ([Filing No. 8](#).) The court construed Plaintiff's motion as an amended complaint and conducted an initial review. ([Filing No. 11](#).) Upon initial review, the court ordered Plaintiff to file a second amended complaint asserting cognizable individual capacity claims against Defendants. (*Id.*) The court warned Plaintiff that an amended complaint will supersede, not supplement, all previous complaints. (*Id.*) Plaintiff subsequently filed a second amended complaint. ([Filing No. 12](#).) The court now conducts review of Plaintiff's second Amended Complaint.

# I. SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff alleges that the Douglas County Mental Health Board civilly committed him to the Lincoln Regional Center ("LRC"). ([Filing No. 12 at CM/ECF p. 2](#).) Plaintiff now resides at the Norfolk Regional Center ("NRC"). He names as Defendants in his second Amended Complaint: Courtney Phillips ("Phillips"), Director of the Nebraska Department of Health and Human Services ("DHHS"), six employees who work at LRC, and Gavin Wiseman, a patient at LRC. (*Id*. at CM/ECF pp. 2-4.) He sues each of them in their individual capacities. (*Id*.) Plaintiff seeks declaratory, injunctive, and monetary relief. (*Id*. at CM/ECF pp. 30-31.)

**Phillips**

Plaintiff alleges that he sent letters to Phillips about his "transgender issues" and "other concerns of indifference treatment." (*Id*. at CM/ECF p. 4.) He also alleges that she is "aware of the indifference" inflicted upon him at LRC because of a statement from Defendant Shannon Black ("Black") that the administration at LRC is frequently in contact with DHHS. (*Id*. at CM/ECF p. 5.) Plaintiff believes that Phillips "has the ability to change[ ] or reply to his correspond[e]nces in a timely manner." (*Id*.)

**Black**

Plaintiff alleges that Black retaliated against him when he received the minimum of four points on his February 12, 2016, treatment review plan for submitting a grievance on January 23, 2016, about staff member Marilyn Bailey's statement to Plaintiff that she was taking his "Bod Body Spray" because it contained alcohol and Plaintiff could drink it. (*Id*. at CM/ECF p. 6.) Plaintiff alleges that, while addressing the grievance with Black, Black told him, "Writing grievances here is not tolerated, it only takes away from your treatment, you need to manage this in other ways, on the street how would you manage this? So, if you

want to be here another 2-3 more years then go ahead and shoot your foot off." (*Id.*) He claims that she later stated, "You filed lawsuits against the Norfolk Regional Center and I got copies of that." (*Id.*)

Plaintiff claims that he discussed his concerns with Black about a patient with H.I.V. carelessly defecating on the toilet. (*Id.* at CM/ECF pp. 6-7.) Black told him that "there's nothing that would be done." (*Id.* at CM/ECF p. 7.) Plaintiff states that nothing was done for four weeks. (*Id.*) He asserts that Black sent e-mails to Defendants Jana Stoner ("Stoner"), Cindy Dykeman ("Dykeman"), and Lisa Laurell ("Laurell") informing them of Plaintiff's concerns and warning them against their opinions. (*Id.*) He also claims that she e-mailed the units that patients were no longer allowed to write concerns or call DHHS to discuss grievances. (*Id.*) Plaintiff alleges that Black retaliated against him when she denied him the opportunity to participate in the May 1st patient "Food Order Out." (*Id.*) Finally, he claims that Black confronted him about "mentioning the Ombudsman" and stated, "Go ahead Cornelius, just jump off the cliff, and you'll be here that much longer." (*Id.*)

**Dykeman**

Plaintiff claims that, during a discussion of a grievance, Dykeman stated to him, "I don't like having to go over to the administration building having to answer to grievances. Mentally ill is on your diagnosis and you need to not be so thin skinned. You need to get through the program." (*Id.* at CM/ECF p. 9.) Plaintiff alleges that, during discussion of a second grievance concerning Defendant Gavin Wiseman ("Wiseman"), Dykeman stated, "I've been here for over 30 years, and patients who get caught up in writing [grievances] trying to change the rules tend to move slower through this program." (*Id.* at CM/ECF p. 10.) After the discussion, Dykeman stopped Wiseman in the hallway and stated, "You just keep doing what you're doing, I'm gonna get you through here." (*Id.*) Plaintiff alleges that, on April 26, 2016, he was moved into a single room directly across from the

3

office of Stoner and Laurell. (*Id*.)  He states that, the next day, Dykeman stated, "Go ahead and just jump off the cliff," when he requested to return to Norfolk. (*Id*)

Plaintiff alleges that he spoke to Dykeman about the smell of the washers and having to use the washers after another patient with an infection. (*Id*.) Dykeman commented in response that, if the issues with the washers continue, they will put everyone in sweats like the mentally ill patients. (*Id*. at CM/ECF p. 11.) Plaintiff claims that Dykeman then stated, "You and these grievances, and wanting to wear [women] clothes is a bit much for LRC, and your being legal minded, maybe we should send you back to NRC." (*Id*.)

Plaintiff alleges that, on October 28, 2016, he returned to NRC. (*Id*.) He states that on their visits to NRC, both Dykeman and Black have made negative comments about his transgender rights and suggested that he should not receive the appropriate points to return to LRC. (*Id*.)

**Stoner**

Plaintiff alleges that Wiseman returned from a meeting on April 19, 2016, with Stoner and told Plaintiff, "[Stoner] told me during our 1:1 today, that because of who you are, and what you are (transgender) you need to watch yourself." (*Id*. at CM/ECF p. 14.) The next day, Plaintiff met with Stoner in Black's office about the statement. (*Id*.) Plaintiff alleges that Stoner stated, "I am Gavin's therapist, and what if I did say it? Can you prove it?" (*Id*.) Plaintiff contacted the Ombudsman's Office that day and filed a grievance about Wiseman and another "white" staff member making inappropriate comments to Wiseman. On April 25, 2016, Stoner told an African-American staff member, who Plaintiff was speaking to about his frustration, "You are not allowed to talk to other patients about patients." (*Id*. at CM/ECF p. 15.) The next day, Plaintiff was moved into the single room referenced above "at the decision of Stoner, Malone, Black, and Dykeman." (*Id*.) Stoner also changed Plaintiff's peer meeting with Wiseman without notifying Plaintiff. (*Id*.)

4

Plaintiff alleges that Stoner was made aware of a sexual act between Plaintiff and Wiseman. (*Id*.) Plaintiff alleges that Wiseman came into his room, exposed himself, and Plaintiff masturbated Wiseman. (*Id*.) Plaintiff complains that, although Wiseman consented to the act, several of the defendants imposed harsher disciplinary actions upon him than on Wiseman. (*Id*. at CM/ECF pp. 15-16.) He claims that Stoner treated him different from Wiseman "who was in a similarly situated act of sexually acting out." (*Id*. at CM/ECF p. 16.) He states that Stoner made negative comments about his gender identity rights. (*Id*.)

**Laurell**

Plaintiff alleges that he filed a grievance about Laurell's statement to him that, "You were found to be mentally ill, and will be treated as such." (*Id*. at CM/ECF p. 18.) Plaintiff claims that when confronted about the grievance, Laurell made "unwanted comments about patients who were civilly committed." (*Id*.) He states that the comments continued for 2 ½ months before he spoke to Black about them. (*Id*.) Plaintiff states that he filed another grievance against Laurell for stating during a group meeting, "That's enough on hearing about Cornelius' gender issues," when Plaintiff was answering questions about his transgender. (*Id*. at CM/ECF p. 19.) Plaintiff left the group humiliated and was given a negative mark in treatment for doing so. (*Id*.) He states that Laurell also made false allegations against Plaintiff by stating, "Gavin said that you initiated the act-out," and those statements were sent to the Mental Health Board. (*Id*.)

Plaintiff alleges that he informed Laurell about his decision to meet with a reporter from the Lincoln Journal Star newspaper. (*Id*. at CM/ECF p. 18.) Plaintiff claims that Laurell then contacted Black, and they sent an e-mail denying Plaintiff any access to the staff writer at the newspaper. (*Id*.) He alleges that Laurell photocopied entries from his journal in an attempt to persuade him from seeking any legal help. (*Id*. at CM/ECF pp. 18-19.)

**Malone**

Plaintiff alleges that he spoke to Defendant Karl Malone ("Malone") about the smell of and mildew in the washers, as well as about having to use the washers after another patient with an infection. (*Id.* at CM/ECF p. 21.) Plaintiff complains that, in response, Malone walked away and angrily stated, "Why is this such a big deal? [H]e uses the washers after everyone else." (*Id.*) Plaintiff alleges that when he mentioned filing a grievance, Malone stated, "You writing grievances, who can say you didn't bring it here." (*Id.*)

Plaintiff generally states that Malone retaliated against him on several occasions. (*Id.*) Examples of this retaliation, according to Plaintiff, are that out of Plaintiff's thirteen months at LRC, he had only two staff meetings with Malone while other patients had many; Malone wrote negative to poor entries on his treatment files and mental health board notes; and Malone's input resulted in his placement in the single room visible by all administration staff. (*Id.* at CM/ECF pp. 21-22.) He states that he had several discussions with Malone about staff opening his door without knocking when Plaintiff is "in a state of undress." (*Id.* at CM/ECF p. 22.) Plaintiff believes that Malone's actions are because he is a defendant in Plaintiff's gender identity case. (*Id.*); *See Brown v. Department of Health and Human Services, et al.*, Case No. 8:16CV377 (D. Neb.).

**Closen**

Plaintiff alleges that Closen threatened to place him on privilege suspension but kept Wiseman in her office most of the evening after an argument between Plaintiff and Wiseman. (*Id.* at CM/ECF p. 24.) When Plaintiff asked Wiseman why he was in Closen's office, Wiseman stated, "I'm a white boy, and the staff looks at me as one of their kids, especially [Closen]." (*Id.*)

Plaintiff alleges that Closen took Wiseman alone to try on different clothes. (*Id.*) Plaintiff alleges this is against the rules. (*Id.*) He states that, after he

"confronted and questioned it," Closen started minimally interacting with Plaintiff and two other African-American patients. (*Id*. at CM/ECF pp. 24-25.) He claims that Closen "coaxed" staff to open his door without knocking. (*Id*. at CM/ECF p. 25.) He alleges that Closen gave Plaintiff negative points on his treatment plan and caused Plaintiff to lose his job status while Wiseman advanced in treatment and was given a better job after the "mutually consented act-out." (*Id*.) Plaintiff alleges that Closen demonstrated "adverse action" after Plaintiff wrote a grievance against Closen and confronted her about "the clothing room issue." (*Id*.)

**Wiseman**

Plaintiff complains that Wiseman exhibited several behaviors that have resulted in repercussions for other patients but minimal consequences for Wiseman, including for the mutual sex act between Plaintiff and Wiseman and Wiseman's comments to "fight" with Plaintiff. (*Id*. at CM/ECF pp. 27-28.)

## II.  APPLICABLE STANDARDS OF REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

Plaintiff is an experienced litigant. *See e.g.*, *Brown v. Rodrequiez*, 4:14CV3071 (D. Neb.); *Brown v. Strong*, 8:14CV298 (D. Neb.); *Brown v. Department of Health and Human Services et al*, 8:16CV377 (D. Neb.); *Brown v. Department of Health and Human Services et al*, 8:16CV569 (D. Neb.). Plaintiff's claims against Phillips are dismissed. The court has informed Plaintiff, on more than one occasion, that failure to respond to his grievances and complaints in a timely fashion do not constitute a violation of his constitutional rights. Plaintiff's claims against Wiseman are dismissed. The court has also previously informed Plaintiff that he does not have cognizable § 1983 claims against his fellow inpatients, as they are not state actors, and the court can discern no other basis for relief against Wiseman. With regard to Laurell and Malone, any of Plaintiff's claims deemed "plausible" have already proceeded to service of process in 8:16CV377 (Filing No. 8) (i.e. Lincoln Journal Star retaliation claim; gender identity due process and equal protection claims).

The court is left to examine Plaintiff's remaining claims of retaliation.[1] Plaintiff's claims concern the remaining defendants' actions or reactions to his grievances about various matters. The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out. *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)); *Bernini v. City of St. Paul*, 665 F.3d 997, 1006–07 (8th Cir. 2012); *see Small v. McCrystal*, 708 F.3d 997, 1008 (8th Cir. 2013). To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Peterson*, 754 F.3d at 602.

Plaintiff's claims against Dykeman and Stoner are dismissed. Plaintiff's allegations fail to establish that they took an adverse action against him and/or that

---

[1] Plaintiff raises an equal protection claim over the differential treatment he received from some of the defendants after his sexual act with Wiseman. Plaintiff does not have a plausible equal protection claim. He has not shown that the differential treatment was based upon either a suspect classification or a "fundamental right." *See Patel v. United States Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008). But, even if the court were to construe Plaintiff's equal protection claim under a "class-of-one" theory, his allegations fail to show that he and Wiseman are "identical or directly comparable . . . in all material respects." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)). And, a class-of-one claim does not extend to cases where the rules are uniformly applicable and a state official exercises his "discretionary authority based on subjective, individualized determinations." *Novotny v. Tripp Cty., S.D.*, 664 F.3d 1173, 1179 (8th Cir. 2011) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602-03 (2008)).

the adverse action was motivated at least in part by his exercising his right to file grievances. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (verbal threats and name calling usually are not actionable under § 1983). *See also*, *Turner v. Mull*, 784 F.3d 485 (8th Cir. 2015) (mere timing of events alone does not establish the requisite causal link); *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (speculative and conclusory allegations cannot support a retaliation claim).

The court will, however, allow Plaintiff's retaliation claims against Black and Closen to proceed. Specifically, Plaintiff alleges that Black gave him the minimum of four points on his February 12, 2016, treatment review plan in retaliation for his January 23, 2016, grievance about staff member Marilyn Bailey. Plaintiff alleges that Closen "coaxed" staff to open his door without knocking and gave him negative points on his treatment plan in retaliation for his grievance against and confrontation of Closen about when she took Wiseman alone to try on clothes against the rules. Liberally construed, these allegations "nudge" Plaintiff's retaliation claims against Black and Closen from "conceivable to plausible." However, Plaintiff's remaining allegations against them do not for the same reasons his claims against Dykeman and Stoner are dismissed. The court cautions Plaintiff that this is only a preliminary determination based on his allegations, and is not a determination of the merits of his claims or potential defenses thereto.

IT IS THEREFORE ORDERED that:

1. Plaintiff's First Amendment retaliation claims against Defendant Shannon Black and Defendant Chalice Closen in their individual capacities may proceed to service of process.

2. For service of process on Defendant Shannon Black and Defendant Chalice Closen in their individual capacities, the clerk of the court is directed to complete 1 summons form and 1 USM-285 form for Defendant Shannon Black and 1 summons form and 1 USM-285 for Defendant Chalice Closen, all using the address Lincoln Regional Center, 801 W Prospector Pl, Lincoln, NE 68522 and

forward them together with a copy of the second Amended Complaint (Filing No. 12) and a copy of this Memorandum and Order to the Marshals Service. The Marshals Service shall serve Defendant Shannon Black and Defendant Chalice Closen personally in their individual capacities at the Lincoln Regional Center, 801 W Prospector Pl, Lincoln, NE 68522. Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

3. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

4. The clerk of the court is directed to set the following pro se case management deadline: **July 25, 2017**: check for completion of service of process.

Dated this 26th day of April, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge